Argued and submitted April 5, affirmed September 15, 1999, petition for review denied January 18, 2000 (329 Or 589)

## STATE OF OREGON,
*Respondent,*

*v.*

## TIMOTHY MICHAEL JESSEN,
*Appellant.*

### (CR96-448; CA A99774)

986 P2d 684

Frank E. Stoller argued the cause and filed the brief for appellant.

Katherine H. Waldo, Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before Landau, Presiding Judge, and Linder and Brewer, Judges.

BREWER, J.

## BREWER, J.

Defendant appeals from his convictions on three counts of attempted rape in the second degree, ORS 161.405[1] and ORS 163.365.[2] Defendant asserts that there was insufficient evidence to prove that he engaged in conduct constituting a substantial step toward the commission of those crimes and, therefore, that the trial court erred in denying his motions for judgment of acquittal. For the following reasons, we affirm.

◼       In reviewing the denial of a motion for judgment of acquittal, we resolve any conflicts in the evidence in favor of the state and give the state the benefit of all inferences that can reasonably be drawn from the evidence. *State v. Krummacher*, 269 Or 125, 137, 523 P2d 1009 (1974). In the light most favorable to the state, the evidence established the following facts.

On three occasions defendant approached his 13-year-old adopted daughter and asked her to have sexual intercourse with him.[3] The first incident occurred in defendant's car when defendant was taking his daughter to school. About the time they arrived at school, defendant told his daughter that he wanted to teach her how to have sex. He also told his daughter that if she wanted more freedom to go out with friends, she had to have sex with him. The daughter declined and left the car at school. About two weeks later, defendant and his daughter were at home having dinner together while other family members may have been present in other parts of the residence. Defendant again told his daughter that if she wanted to have more freedom from

---

[1] ORS 161.405 provides, in part:

"(1) A person is guilty of an attempt to commit a crime when the person intentionally engages in conduct which constitutes a substantial step toward commission of the crime."

[2] ORS 163.365 provides, in part:

"(1) A person who has sexual intercourse with another person commits the crime of rape in the second degree if the other person is under 14 years of age."

[3] The daughter testified that defendant asked her numerous other times to have sex with him. Because defendant's convictions relate only to these three incidents, we do not discuss the other alleged solicitations by defendant.

parental restraints, she had to have sex with him. He also repeated that it was time for her to learn to have sex. The daughter responded this time by leaving and going to a friend's house. She also told her mother about defendant's actions, and her mother told defendant to leave their daughter alone. However, several weeks later, while they were visiting relatives, defendant asked his daughter if she had thought any further about having sex with him. He reminded his daughter that he would give her all the freedom she wanted and that it was his role to teach her to have sex. Besides asking his daughter to have sexual intercourse with him on those occasions and offering her "more freedom" in return, defendant never expressly threatened her, never touched her, and never offered her money in return for sex. Although the daughter felt that she had sufficient freedom, she still considered defendant's offer of more freedom more valuable than money.

Shortly after the third incident, the daughter again told her mother about defendant's conduct. The child's mother and defendant quarreled, and the child's mother once more told defendant to leave their daughter alone. Defendant apologized and said it would never happen again. At about the same time, defendant told a friend that he had asked his daughter for sex and that she had turned him down. Defendant also admitted that he would have had sex with his daughter had she consented. Several months later defendant again propositioned his daughter for sexual intercourse. At that time, defendant was reported to the police and to Services to Children and Families (SCF). Defendant admitted to the SCF investigator that he had "sexual fantasies" about his daughter and wanted to have sexual intercourse with her.

■ Defendant was arrested and charged with three counts of attempted second-degree rape. At trial, defendant twice moved for judgment of acquittal on all counts. The trial court denied both motions, reasoning that defendant's repeated solicitation of sexual intercourse coupled with defendant's statements to his friend provided sufficient evidence for a jury to render a guilty verdict. The trial court concluded that the context of the solicitations was especially important because, among other reasons, defendant was an authority figure for his daughter and because defendant

offered something of value "more freedom"—to his daughter. Defendant was subsequently found guilty and convicted on all three counts of attempted rape in the second degree. On appeal, defendant assigns error to the denial of his motions for judgment of acquittal. In reviewing the denial of a motion for judgment of acquittal, we determine whether the evidence was sufficient to permit the jury to find the defendant guilty beyond a reasonable doubt. *Krummacher*, 269 Or at 138.

To prove that defendant committed the offense of attempted rape in the second degree, the state was required to establish that defendant "intentionally engage[d] in conduct which constitute[d] a substantial step" toward having sexual intercourse with his daughter, a child under 14 years old. ORS 161.405; ORS 163.365. The state was not required to establish that defendant attempted sexual intercourse by forcible compulsion, because even consensual sexual intercourse with a person under 14 years of age constitutes second-degree rape. Defendant does not dispute that the evidence was sufficient to prove that he intended to ask his daughter to have consensual sexual intercourse with him. Instead, defendant asserts that his verbal enticements to his daughter were not "conduct" within the meaning of ORS 161.405. Alternatively, defendant argues that his actions did not constitute a "substantial step" toward the commission of rape in the second degree. We address each argument in turn.

Defendant contends that the utterance of words without a concomitant physical act cannot constitute "conduct" within the meaning of ORS 161.405. Because defendant's argument presents a question of statutory construction, we must examine the text and context of ORS 161.405 and, if necessary, its legislative history and other aids of construction in order to discern the meaning of "conduct" as used in that statute. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993).

The text of the statute is our starting point, because it is the best evidence of legislative intent. *Id.* at 610. However, the text of ORS 161.405 provides no guidance as to the meaning of "conduct"; therefore, we turn to the context of the

statute, which includes the provisions of other related statutes. *State v. Guzek*, 322 Or 245, 253, 906 P2d 272 (1995). The legislature has generally defined the word "conduct" for purposes of the criminal code. ORS 161.085(4) provides "unless the context requires otherwise * * * '[c]onduct' means an *act* or omission and its accompanying state of mind." An "act" means a "bodily movement." ORS 161.085(1). The parties agree that those definitions control the analysis but disagree as to whether the act of speaking constitutes bodily movement. Because "bodily movement" is not defined by statute, we turn to its plain and ordinary meaning. *PGE*, 313 Or at 611.

■     "Bodily" means "of or relating to the body." *Webster's Third New Int'l Dictionary,* 245 (unabridged ed 1993). "Movement" means "the action or process of moving." *Id.* at 1480. Thus, the ordinary and plain meaning of the phrase "bodily movement" means the action or process of moving a body part. Defendant argues that bodily movement requires something more than moving the mouth and aspirating air over vocal cords. However, the act of speaking necessarily includes moving those and other body parts, including the tongue. Nothing in the text or context of ORS 161.405 suggests that the legislature intended to exclude such bodily movements from the statutory definition of conduct.

A construction of the word "conduct" to include the act of speaking is supported by the Supreme Court's decision in *State v. Walters*, 311 Or 80, 85-86, 804 P2d 1164 (1991), which constitutes part of the context of ORS 161.405. *Guzek*, 322 Or at 255. In *Walters*, the court was required to determine whether the "defendant's *conduct* constituted a *substantial step*" so as to support convictions for attempted rape and sodomy of a 13-year-old child. 311 Or at 85 (emphasis added and in original). The court held that, taken together, the defendant's verbal enticements to the intended victim, the defendant's corroborating statements to the intended victim's mother and to the police, and the defendant's act of following the intended victim constituted a substantial step toward commission of the crimes of rape, sodomy, and kidnaping. *Id.* at 86. Although the court did not expressly hold that the statements were "conduct," that conclusion is implicit, because the court identified them as actions capable

of comprising a substantial step toward the commission of the intended crimes.[4] Our previous decisions are likewise consistent with the conclusion that the verbal enticement of a prospective victim constitutes conduct qualifying as a substantial step for purposes of attempted sexual offenses. *State v. McJunkin*, 27 Or App 401, 405, 556 P2d 164, *rev den* (1977) (verbal enticement of nine-year-old child with offer of money, coupled with expressed desire for intercourse supported conviction of attempted first-degree rape); *Rinkin*, 141 Or App at 366 (verbal enticement of 10-year-old child to engage in sexual activity constituted substantial step toward commission of rape and sodomy).

For the foregoing reasons, we conclude that defendant's verbal enticement of the victim constituted "conduct" for purposes of ORS 161.405. We next turn to defendant's contention that such enticement, even if properly characterized as conduct, did not constitute a substantial step toward the commission of the crime of second-degree rape.

■■ In order for conduct to be a substantial step it must strongly corroborate the defendant's criminal purpose—that is, the conduct must "(1) advance the criminal purpose charged and (2) provide some verification of the existence of that purpose." *Walters*, 311 Or at 85. Here, defendant does not contest the unopposed evidence that his enticements were intended to promote and result in sexual intercourse with his daughter. Thus, he essentially concedes the verification of his criminal purpose. However, defendant argues that those enticements did not sufficiently advance his criminal purpose so as to constitute a substantial step, because he did not endeavor to lure his daughter to a "private area immediately" for the purpose of engaging in sexual intercourse.

As the court observed in *Walters*, the Commentary to the Oregon Criminal Code of 1971 provides that "enticing or seeking to entice the contemplated victim of the crime to go to

---

[4] As did the defendant in *State v. Rinkin*, 141 Or App 355, 365, 917 P2d 1035 (1996), defendant contends that *Walters* was effectively superseded by the Ninth Circuit Court of Appeals' decision granting federal habeas corpus relief to the defendant in *Walters*. *See Walters v. Maass*, 45 F3d 1355 (9th Cir 1995). We reject that contention for the reasons explained in *Rinkin,* which we will not repeat here.

the place contemplated for its commission" should be sufficient as a matter of law to constitute a substantial step. *Id.* at 86. Defendant interprets that reference to mean that an attempt must seek, at a minimum, to cajole the contemplated victim to go "immediately" to a "private" place intended for the commission of the crime. He asserts that his enticements were insufficient because "[i]n the first instance [his daughter] got out of the car when they arrived at school, in the second incident [his daughter's] brother may have been in the house, and in the third instance her brother and cousins were visibly close and nearby."

To support his argument, defendant relies on *Walters, McJunkin*, and *Rinkin*. Defendant points out that in each of those cases the defendant tried to entice the intended victim to get into the defendant's car or go to the defendant's home and that the reviewing court held that such conduct corroborated the defendants' criminal purposes to commit sexual offenses. *Walters*, 311 Or at 83; *Rinkin*, 141 Or App at 357; *McJunkin*, 27 Or App at 405. From those decisions, defendant generalizes that, in order to facilitate the crime of rape, an enticement must seek to persuade the intended victim to go immediately to a private place. We agree with defendant that an accused's expressed desire for privacy and immediacy may strongly advance and verify his criminal purpose but disagree that they are essential to satisfy the substantial step requirement.

In *Walters*, *McJunkin* and *Rinkin*, the defendant and the intended victim were strangers. Thus, the defendant *had* to ask the intended victim to get into the defendant's car or go to the defendant's home—the defendant's private area of control—in order to advance the criminal purpose. *See Rinkin*, 141 Or App at 365 (enticement of victim to private location under the defendant's exclusive control facilitates criminal purpose). Here, by contrast, defendant and his daughter lived in the same household, and defendant had parental control over his daughter. Because of the nature of their relationship, defendant did not need to try to lure his daughter to a private place under his control in order to advance his criminal purpose. As her parent, defendant was uniquely positioned to choose the time and place of any sexual encounter, assuming he obtained his daughter's consent.

In the context of their relationship, defendant's offers of more freedom from parental control—something that his daughter considered more valuable than money—in return for sexual intercourse strongly advanced and verified defendant's criminal purpose. We conclude, therefore, that there was sufficient evidence from which a jury could find beyond a reasonable doubt that defendant's conduct constituted a substantial step toward the commission of second-degree rape.

Affirmed.